IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAVUE CORPORATION,<br><br>　　　　Appellant,<br><br>　v.<br><br>HELLER EHRMAN LLP,<br><br>　　　　Appellee. | No. C 14-3887 CRB<br><br>**ORDER AFFIRMING BANKRUPTCY COURT** |

　　Appellant Paravue Corporation appeals the Bankruptcy Court's grant of summary judgment for Heller Ehrman, Paravue's former counsel, on Paravue's Claim 1019 for professional malpractice and Claim 1020 for breach of fiduciary duty (the "Claims"). See Bankr. Ct. Order (dkt. 1-4). The Bankruptcy Court concluded that the one year California statute of limitations applicable to the Claims had run and granted summary judgment for Heller Ehrman. For the following reasons, this Court AFFIRMS.

**I.　Background**

　　**A.　Paravue Hires Heller Ehrman and Receives Financing from Acuity**

　　Paravue was a computer software start-up company founded in 2002 by Lauren Barghout under the name LizardEye Systems, Inc. See Barghout's Declaration in Opposition to Summary Judgment ("Barghout Decl.") ¶¶ 1–10 (dkt. 37-10). The start-up hired Heller Ehrman to handle corporate formation and other transactional legal matters. Barghout Decl.

¶¶ 16–17. Heller Ehrman received part of its legal fees in stock, but the firm accepted stock without first receiving a signed letter from the start-up waiving any conflict of interest that Heller Ehrman's stock ownership might create. Id. ¶¶ 16–17, 22. Instead, Heller Ehrman received a waiver letter from the company after the stock transfer had been completed. Id. Around that same time, LizardEye changed its name to Paravue Corporation and was re-incorporated in Delaware by a Heller attorney. Id. ¶ 18.

Paravue then secured financing from the venture capital firm Acuity Ventures II, LLC. Id. ¶ 23. Paravue's executives, including Barghout, approved a loan agreement that authorized Acuity to "call in its debt at any time after the maturity date, and Paravue would be obligated to pay the amount within 30 days." Id. ¶ 24. The agreement specified that Acuity was entitled to convert, at any time, all or part of the outstanding principal into preferred stock at a specified price. See Loan Agreement of May 25, 2004 (dkt. 37-6) at 38. The loan terms also specified that "in the event of default," which included failure to comply with any covenant within 10 business days following written notice, "all unpaid principal and accrued interest becomes, at Acuity's option, immediately collectible by or on behalf of Acuity." See id. Heller Ehrman approved these contract terms. Barghout Decl. ¶ 24. Over the following months, Barghout reviewed and Paravue accepted additional loans that contained the same terms as Paravue's initial loan from Acuity. See Barghout Deposition (dkt. 41-4) at 65. As a condition of additional financing, Acuity required one of its partners, Laurence Hootnick, appointed to Paravue's board of directors. See Amendment to Loan Agreement (dkt. 37-6) at 76.

**B.     Disputes Arise Between Paravue and Acuity**

Leading up to December 2006, in Acuity's view, Paravue had missed a number of deadlines and failed to deliver finished products. See Hootnick Deposition (dkt. 41-5) at 53. Paravue held a board meeting in December 2006 at which Barghout was informed that

2

employees were complaining about her management.[1]  See Barghout Deposition (dkt. 41-4) at 90.  The board then appointed Hootnick CEO of Paravue.  Barghout Decl. ¶ 44.  Heller Ehrman did not object to a partner in Paravue's largest creditor (Acuity) also becoming CEO and a board member of Paravue itself.  Id.  Paravue's board continued to approve additional financing from Acuity.  Id. ¶ 46.

In March 2007, Hootnick attempted to terminate Barghout.  Id. ¶¶ 54–56.  The next month, on April 2, 2007, Acuity sent Paravue written notice of its election to convert the outstanding principle of Paravue's loans into preferred stock.  See Conversion Notice (dkt 41-5) at 183.  On April 6, Heller attorney Stephen Thau sent an e-mail to Barghout attaching several documents for her signature, including written consents of Paravue's directors and stockholders to amend the company's Certificate of Incorporation to authorize issuance of preferred stock.  See Barghout Deposition (dkt. 41-4) at 108.  Barghout refused to authorize issuance of the stock.  See Barghout Decl. ¶ 59.  On April 13, 2007, Acuity sent Paravue a Notice of Default and accelerated the loans based on Paravue's failure to comply with the request to convert.[2]  See id. ¶ 61.  Barghout continued to refuse requests to authorize the issuance of preferred stock.  See Barghout Deposition (dkt. 41-4) at 15–20.

**C.    Heller Ehrman's Conflict of Interest and Barghout's Legal Representation**

On May 7, 2007, Acuity brought an action against Paravue and Barghout in Santa Clara Superior Court to force a conversion of Paravue's debt into preferred stock.  Id. ¶ 68.  At around this time, an internal memo from Heller Ehrman indicated that the firm had begun investigating whether it faced a conflict of interest that required it to withdraw from

---

[1] Barghout later testified that the board "extended the obligations under the Acuity II and Acuity III agreements until to November 30, 2007" at that meeting, see Barghout Decl. ¶ 45, although Heller Ehrman has identified evidence disputing that testimony.  See Appellee's Br. (dkt. 41) at 6 n.8.

[2] Again, Barghout later testified that Acuity was not entitled to an issuance of preferred stock until after the loan's maturity date of November 2007, see Barghout Decl. ¶ 61, but Heller Ehrman responds that the loan agreements expressly stated that Acuity could convert all or part of its debt at any time, and that failure to comply with such a request entitled Acuity to accelerate the loans, see, e.g., Loan Agreement of May 25, 2004 (dkt. 37-6) at 38.

3

representing Paravue. Barghout Decl. Ex. 16 (dkt. 37-14) at 30–36. During May 2007, however, Heller Ehrman continued to represent Paravue as directed by Hootnick.

On May 22, 2007, Acuity moved for a temporary restraining order and preliminary injunction to stop Paravue and Barghout from convening a special shareholder meeting to address Acuity's attempt to either convert its debt into equity or alternately to foreclose on Paravue. Barghout Decl. ¶ 70. An attorney representing Barghout, Jack Russo—rather than a Heller Ehrman attorney—opposed the motion. Id. Barghout submitted a declaration to the state court on May 23 noting that a shareholder meeting was necessary to, among other things, appoint a replacement for Heller Ehrman as corporate counsel for Paravue given the firm's conflict of interest. See Barghout State Court Decl. (dkt. 41-5) at 169–176.

The motion for a temporary restraining order was heard on May 25, 2007; a Heller Ehrman attorney appeared but offered no opposition to Acuity's motion. Barghout Deposition (dkt 41-4) at 130–131. Instead, Russo opposed the motion. Id. At the June 25 evidentiary hearing on the request for a preliminary injunction, Heller Ehrman attorneys appeared but there is no evidence that they opposed Acuity. See Order on Preliminary Injunction (dkt. 37-8) at 37–45. Barghout stated by declaration that "I firmly believe [Heller] is not neutral, is not doing what is required by applicable law, and is simply acting as an additional advocate for plaintiffs in this case." See Barghout Deposition (dkt 41-4) at 160–161. The state court denied the preliminary injunction and ordered a special shareholders meeting to be held at Russo's office within 15 days. Barghout Decl. ¶ 71.

In June 2007, Acuity sent Paravue a letter demanding that it assemble its assets for disposition at a public sale on July 18, 2007. Id. ¶ 75. Hootnick directed Paravue to cease operations, changed the locks at the Paravue faciity, and hired most of the Paravue team to work for a newly formed company under Acuity's control. Id. ¶ 77. Russo and Barghout requested that Heller Ehrman oppose Acuity's actions. Id. ¶ 76. Heller Ehrman stated that it would not operate at Barghout's direction, and, if she or Russo believed they had the authority to act on behalf of Paravue, they should retain other counsel. See Email from R. Hawk (dkt. 37-8) at 54.

4

### D.  Heller Ehrman Withdraws as Counsel

After Heller Ehrman refused to act on behalf of Barghout, Russo filed an application for a temporary restraining order to block Acuity's foreclosure sale. See Russo Application (dkt. 37-8) at 56.  On July 10, 2007, a state court judge issued the restraining order. Barghout Decl. ¶ 78.  Barghout learned at the July 10 hearing that Hootnick had resigned as Paravue's CEO, and shortly thereafter she appointed herself CEO. Id. ¶ 79.  At the July 10 hearing, an attorney named Michael Ackerman appeared specially on Barghout's behalf and stated that he would step in to represent Paravue if Heller Ehrman withdrew. Id. ¶ 79.

Heller Ehrman sent an email to Barghout, Russo, and Ackerman that same day—July 10, 2007—with an attached substitution of counsel form, requesting Barghout's consent to immediately withdraw as counsel. See First Withdrawal Email (dkt. 41-5) at 195.  The next morning, on July 11, Heller Ehrman sent Russo another email confirming the law firm's intent to withdraw and inquiring again whether Paravue would accept. See Second Withdrawal Email (dkt. 41-5) at 205.  Russo replied that before Barghout would consent to the withdrawal, she wanted to know the total fees paid to Heller Ehrman since its business relationship with Paravue began. See Barghout Deposition (dkt. 41-4) at 188.  Barghout also wanted to know what portion of the fees and stock previously paid to Heller Ehrman by Paravue the law firm was willing to refund "as a condition of withdrawal." Id.

On July 11, 2007, Heller Ehrman then filed an ex parte application in the state court for leave to withdraw as Paravue's counsel. See Ex Parte Application for Leave to Withdraw (dkt. 41-5) at 197.  Russo appeared at the July 12 hearing on the motion to withdraw, and the state court set another hearing on the matter for July 17. See Santa Clara Superior Court Withdrawal Documents (dkt. 41-5) at 1119–20, 1128–29.  The state court granted Heller Ehrman's motion to withdraw at that July 17 hearing. Id.

### E.  Heller Ehrman Winds Up and New Counsel Represents Paravue

Some evidence in the record indicates that Heller Ehrman continued to work on matters for Paravue between the time it made its initial request to withdraw on July 10, 2007, and the court's order granting its request to withdraw on July 17, 2007.  Two Heller Ehrman

5

1 attorneys exchanged an email discussing Paravue's "cap tables" on July 13. See Barghout
2 Decl. ¶ 82. Heller Ehrman entered an appearance on Paravue's behalf in state court at a July
3 13 hearing over the temporary restraining order entered against Acuity's sale of Paravue. See
4 id. ¶ 83; Hawk Letter (dkt. 37-14) at 72.[3]  Additionally, two Heller Ehrman attorneys
5 engaged in an email conversation from July 17 to July 19, discussing how the firm could
6 effectively withdraw from an appeal over a preliminary injunction involving Paravue and
7 Acuity. See Barghout Decl. ¶ 90. Attorney Ackerman substituted for Heller Ehrman on that
8 appeal beginning on July 25, 2007. Id. ¶ 90. Heller Ehrman also returned a check to Paravue
9 on July 19, 2007, stating that it had no authority to accept checks on behalf of the company
10 because Paravue had only been represented by the firm until Tuesday, July 17, which was the
11 date of the state court's order granting the firm's motion to withdraw. Id. ¶ 91.

### F.   Paravue's Public Sale and the Parties' Tolling Agreement

On August 16, 2007, the state court vacated a temporary restraining order against Acuity's planned sale of Paravue; Acuity held the public sale and then bought Paravue on October 31, 2007. See Appellant's Brief (dkt. 36) at 13–14; Appellee's Brief (dkt. 41) at 12. Heller Ehrman and Paravue then entered into an agreement, effective July 14, 2008, to toll the statute of limitations governing Paravue's potential claims against the law firm. See Tolling Agreement (dkt. 37-8) at 80. On October 27, 2008, the tolling agreement was extended to March 16, 2009. See Agreement to Extend (dkt. 37-8) at 85. The tolling agreement expressly excluded claims that were time-barred as of its effective date—July 14, 2008. See Tolling Agreement (dkt. 37-8) at 80.

---

[3] At that July 13 state court hearing, Ackerman appeared and requested that Acuity deliver all of Paravue's business records that had previously been removed from the Paravue facility to Ackerman's office. See Ackerman Decl. (dkt. 41-5) at 217. That same day, Ackerman attended a meeting of Paravue's board of directors, which now included Barghout following Hootnick's resignation, and the board adopted a resolution to indemnify Barghout for attorney's fees, costs, and expenses incurred for the services of Ackerman and Russo. See Kurtovic Deposition (dkt. 41-5) at 92. Another resolution adopted at that meeting authorized Barghout to negotiate with Heller Ehrman for the return of fees and to condition Paravue's consent to the firm's withdrawal on that reimbursement. Id.

6

### G. Procedural Posture

On December 28, 2008, Heller filed a bankruptcy petition in the United States Bankruptcy Court, Northern District of California. See In re Heller Ehrman, LLP, No. 3:08-bk-32514 (Bankr. N.D. Cal.). Paravue filed the Claims at issue here (Claim 1019 for professional malpractice and Claim 1020 for breach of fiduciary duty) in the Bankruptcy Court on April 27, 2009. See Proof of Claim (dkt. 37-2); Appellee's Brief (dkt. 41) at 1. Heller Ehrman filed motions for summary judgment on the Claims on March 28, 2014. See Bankr. Ct. Order (dkt. 1-4). The Bankruptcy Court concluded that the Claims were time barred under the one year California statute of limitations applicable to legal malpractice actions, Cal. Civ. Proc. Code § 340.6 (West 2014). See id.

## II. LEGAL STANDARD

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law—including a grant of summary judgment—de novo. In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007). The Court draws "all reasonable inferences in favor of the non-movant to determine whether there exists any genuine issue of material fact precluding judgment in favor of the movant as a matter of law." In re W. Asbestos Co., 416 B.R. 670, 691 (N.D. Cal. 2009), aff'd sub nom. Renfrew v. Hartford Acc. & Indem. Co., 406 F. App'x 227 (9th Cir. 2010).

## III. DISCUSSION

The parties agree that the timeliness of the Claims here is governed by California Code of Civil Procedure Section 340.6, which provides a one year statute of limitations for attorney malpractice claims. See Cal. Civ. Proc. Code § 340.6 (West 2014). That section states that an "action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ." Id. The parties do not contend that delayed discovery postponed the accrual of the Claims, see Appellee's Br. (dkt.

41) at 13, but rather agree that accrual began "when appellant[] sustained actual injury." See Karno v. Biddle, 36 Cal. App. 4th 622, 627 (1995).

Paravue and Heller Ehrman each offer different dates for when Paravue sustained an "actual injury," a dispute which decides the case given that the statute of limitations is tolled until that date, see § 340.6(a)(1). Thus, for the statute to have run on the claims here, actual injury must have occurred over a year before the July 14, 2008 effective date of the tolling agreement. See id.; Tolling Agreement (dkt. 37-8) at 80; see generally Karno, 36 Cal. App. 4th 622 (indicating that California courts uphold tolling agreements).

Paravue further asserts that the statute was tolled during the time that Heller Ehrman "represent[ed] the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred," see § 340.6(a)(2), arguing that Paravue's relationship with the firm ended less than a year before July 14, 2008, so the claims are not time barred. For the following reasons, the Court finds that (1) actual injury occurred more than one year before the effective date of the tolling agreement, and (2) Heller Ehrman's representation of Paravue ended more than one year before the tolling agreement went into effect.

**A.     Paravue Suffered Actual Injury Over One Year Before the Effective Date of the Tolling Agreement**

According to the California Supreme Court, "actual injury" under Section 340.6(a)(1) "occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, 958 P.2d 1062, 1065 (Cal. 1998). The "existence of appreciable actual injury does not depend on the plaintiff's ability to attribute a quantifiable sum of money to consequential damages." Id. at 1070. Actual injury "may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy," regardless of whether the injury is remediable. Id. Furthermore, "there is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury." Id. at 1071.

Here, Paravue's Claims assert that Heller Ehrman's negligence and conflict of interest placed Acuity in a position to call in its loan and convert outstanding principal into preferred

8

stock on a timeline that would not have been possible if the law firm had drafted the loan agreements more diligently.  See Proof of Claim (dkt. 37-2).  This negligence "impaired or dimin[ished]" Paravue's "rights or remedies" under the loan agreement, see Jordache, 958 P.2d at 1070, and Acuity used the favorable lending terms to call in its loans and declare that Paravue was in default in April 2007.  See Conversion Notice (dkt 41-5) at 183; Barghout Decl. ¶ 61.  Acuity then filed a lawsuit in May 2007 to compel Paravue to comply with the terms of the loan agreement.  Id. ¶ 68.  Paravue was forced to "expend[] attorney fees as a direct result of its attorneys' alleged negligence," and thus Paravue suffered actual injury at latest in May 2007.  See Jordache, 958 P.2d at 1078; accord Sindell v. Gibson, Dunn & Crutcher, 54 Cal. App. 4th 1457, 1470 (1997) (noting that "the mere fact of . . . litigation" caused by attorney negligence can amount to actual injury).

     Paravue responds that it did not suffer actual injury until Acuity bought the Paravue at a public sale in October 2007, arguing that the disputes and litigation between Paravue and Acuity that took place prior to the public sale gave rise to only a "speculative . . . possibility of future injury."  See Appellant Br. (dkt. 37) at 27; see also Fritz v. Ehrmann, 136 Cal. App. 4th 1374 (2006); Callahan v. Gibson, Dunn & Crutcher LLP, 194 Cal. App. 4th 557 (2011).  This argument fails because a client like Paravue may suffer actual injury "before the client sustains all, or even the greater part, of the damages occasioned by [the] attorney's negligence."  See Jordache, 958 P.2d at 1070.  "Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue."  Id.  Here, the litigation initiated by Acuity in May 2007 caused Paravue to expend defense fees, both in paying Heller Ehrman and in indemnifying Russo and Ackerman.  See Kurtovic Deposition (dkt. 41-5) at 92.  The Court thus concludes based on the undisputed summary judgment record that, taking into account the "specific attorney errors the plaintiff . . . alleges," Paravue suffered actual injury over one year prior to the July 14, 2008

effective date of the tolling agreement.  See Jordache, 958 P.2d at 1078; Sindell, 54 Cal. App. 4th at 1470; In re W. Asbestos Co., 416 B.R. at 691.[4]

### B. Heller Ehrman's Representation of Paravue Ended Over One Year Before the Effective Date of the Tolling Agreement

The parties agree that the Santa Clara County Superior Court granted Heller's motion to withdraw as Paravue's counsel on July 17, 2007.  See Santa Clara Superior Court Withdrawal Documents (dkt. 41-5) at 1119–20, 1128–29.  Paravue argues that this date was less than one year prior to the effective date of the parties' tolling agreement—July 14, 2008—and thus because Section 340.6(a)(2) tolls the limitations period during the time Heller Ehrman "represent[ed] the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred," Paravue's claims are not time barred.  The Court concludes that this argument fails under the relevant California case law.

Section 340.6(a)(2) "does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject matter continues or when the representation ends, and the legislative history does not explicitly address this question." Gonzalez v. Kalu, 140 Cal. App. 4th 21, 28 (2006).  The section's tolling rule "is not triggered by the mere existence of an attorney-client relationship.  Instead, the statute's tolling language addresses a particular phase of such a relationship-representation regarding a specific subject matter" involving the attorney's alleged misconduct.  See Foxborough v. Van Atta, 26 Cal. App. 4th 217, 228–29 (1994).  The rule "was adopted in order to avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired." Laird v. Blacker, 828 P.2d 691, 698 (Cal. 1992) (en banc), as modified on denial of reh'g (July 16, 1992).  California courts primarily employ "an objective standard to

---

[4] Paravue appears to have omitted reference to when the actual injury asserted in Claim 1020 arose, grouping its Claim 1020 arguments together with its Claim 1019 arguments.  See, e.g., Appellant's Reply Br. (dkt. 43) at 10.  Claim 1020 involves Heller Ehrman's receipt of stock without first receiving a conflict waiver; the stock transfer occurred in May 2004, well over a year before July 14, 2008.  See Barghout Decl. ¶ 22.

10

1 determine whether an attorney's representation has ended," taking into account the facts of a particular case. Worthington v. Rusconi, 29 Cal. App. 4th 1488, 1497 (1994).

California courts of appeal have provided additional guidance on when Section 340.6(a)(2) representation ends. It may end "when the client actually has or reasonably should have no expectation that the attorney will provide further legal services. That may occur upon the attorney's express notification to the client that the attorney will perform no further services, or, if the attorney remains silent, may be inferred from the circumstances." Kalu, 140 Cal. App. 4th at 30–31. Here, the undisputed summary judgment record provides extensive evidence that Paravue could expect no further services from Heller Ehrman in its litigation with Acuity. See id. Paravue admits that when Acuity moved in May 2007 for a temporary restraining order to block Barghout's and Paravue's attempt to call an emergency shareholder meeting, a Heller Ehrman attorney appeared but offered no opposition to Acuity's motion. See Barghout Deposition (dkt 41-4) at 130–131. Russo opposed the motion instead. Id. Barghout stated by declaration to the state court that "I firmly believe [Heller] is not neutral, is not doing what is required by applicable law, and is simply acting as an additional advocate for plaintiffs in this case." See Barghout Deposition (dkt 41-4) at 160–161.

The next month, when Acuity sent Paravue a letter demanding that it assemble its assets for disposition at a public sale on July 18, 2007, see Barghout Decl. ¶ 75, and Hootnick directed Paravue to cease operations, changed the locks at the Paravue faciity, and hired most of the Paravue team to work for a newly formed company under Acuity's control, Id. ¶ 77, Russo and Barghout requested that Heller Ehrman oppose Acuity's actions, Id. ¶ 76. Heller Ehrman stated that it would not operate at Barghout's direction, and, if she or Russo believed they had the authority to act on behalf of Paravue, they should retain other counsel. See Email from R. Hawk (dkt. 37-8) at 54. This undisputed record establishes that Paravue could not reasonably expect Heller Ehrman to "provide further legal services" related to the Acuity litigation. See Kalu, 140 Cal. App. 4th at 30–31.

11

Furthermore, California courts have held that a client's retention of "replacement counsel" indicates that the "die was cast and the tolling afforded under Code of Civil Procedure section 340.6, subdivision (a)(2) ended." See, e.g., Hensley v. Caietti, 13 Cal. App. 4th 1165, 1172 (1993) (quoting Croce v. Kurnit, 565 F. Supp. 884, 892 (S.D.N.Y. 1982) aff'd, 737 F.2d 229 (2d Cir. 1984)). This is so because "when the client consulted independent counsel 'he was no longer the disadvantaged client unable to question or to pursue remedies for perceived wrongs' hence 'continuous representation tolling ended.'" Id.

Here, Paravue received advice and representation from independent counsel. As described above, Russo argued Paravue's position at multiple hearings where Heller Ehrman attorneys remained silent. At a July 10 hearing, Ackerman appeared specially on Barghout's behalf and stated that he would step in to represent Paravue in the Acuity litigation if Heller Ehrman withdrew. Barghout Decl. ¶ 79. Heller Ehrman immediately communicated to Paravue, both on July 10 and on July 11, that it agreed to Ackerman's request and that it intended to withdraw as counsel. See First Withdrawal Email (dkt. 41-5) at 195; Second Withdrawal Email (dkt. 41-5) at 205. Paravue delayed agreeing to substitution because it wanted a refund of attorneys' fees from Heller Ehrman "as a condition of withdrawal." Barghout Deposition (dkt. 41-4) at 188. Russo communicated this message to Heller Ehrman, and the only reasonable inference to be drawn from his communication is that he was acting on Paravue's behalf. See id. This record shows that Paravue was far from "the disadvantaged client unable to question or to pursue remedies for perceived wrongs," and "hence continuous representation tolling ended" at latest by July 11, 2007—more than one year before July 14, 2008. See Hensley, 13 Cal. App. 4th at 1172.

Paravue responds that Barghout opposed substitution of counsel, reasoning that Barghout did not subjectively consider the attorney-client relationship to be ended before July 17, 2007—a date which falls within one year of the effective date of the tolling agreement. This argument fails because California courts employ "an objective standard to determine whether an attorney's representation has ended," rather than relying solely on the

1 subjective views of a client to make that determination.  See Worthington v. Rusconi, 29 Cal.
2 App. 4th 1488, 1497 (1994).

3 Finally, Paravue asserts that—less than one year prior to the effective date of the
4 tolling agreement—Heller Ehrman attorneys (1) sent emails regarding Paravue's "cap
5 tables," see Barghout Decl. ¶ 82, (2) appeared as attorneys of record for Paravue at a July 13
6 hearing,  id. ¶ 83; Hawk Letter (dkt. 37-14) at 72, (3) sent emails discussing how the firm
7 could formally withdraw from an appeal involving Acuity and Paravue, see Barghout Decl. ¶
8 90, and (4) returned a check to Paravue on July 19, 2007, stating that they had no authority to
9 accept the check because the firm's relationship with the company had concluded on
10 Tuesday, July 17, id. ¶ 91.  These facts do not bring Paravue within the limitations period
11 because, as discussed above, the test for Section 340.6(a)(2)'s tolling rule "is not triggered by
12 the mere existence of an attorney-client relationship."  See Foxborough v. Van Atta, 26 Cal.
13 App. 4th 217, 228-29 (1994).

14 The evidence Paravue offers goes to the "mere existence" of an attorney-client
15 relationship, which the parties agree was not formally severed until the state court's July 17,
16 2007 order.  See id.; Santa Clara Superior Court Withdrawal Documents (dkt. 41-5) at
17 1119–20, 1128–29.  Section 340.6(a)(2) tolling could and did end well before the entry of
18 that July 17 order given that (1) Paravue could not reasonably have expected Heller Ehrman
19 to "provide further legal services" in opposition to Acuity, see Kalu, 140 Cal. App. 4th at
20 30–31, and (2) Paravue had received advice and representation from independent counsel,
21 see Hensley, 13 Cal. App. 4th at 1172 (1993).

22 The undisputed record thus shows that there is no "genuine issue of material fact"
23 regarding whether the Section 340.6(a)(2) relationship here ended over one year before the
24 effective date of the tolling agreement on July 14, 2008.[5]  See In re W. Asbestos Co., 416

---

[5] Again, Paravue does not attempt to separately identify when Heller Ehrman's representation ended for purposes of Claim 1020, grouping it together with Claim 1019.  See, e.g., Appellant's Reply Br. (dkt. 43) at 10.  Given that the stock transfer at issue in Claim 1020 was completed on May 7, 2004, any "representation" Heller Ehrman provided with regard to that transfer would have ended May 7, well over a year before July 14, 2008.  See Barghout Decl. ¶ 22.

13

B.R. at 691.  This Court concludes that the Bankruptcy Court properly entered judgment for Heller Ehrman as a matter of law.

**IV.   CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order denying the Claims as time barred.

**IT IS SO ORDERED.**

Dated: October 7, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

14