IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAVUE CORPORATION,<br><br>    Appellant,<br><br>    v.<br><br>HELLER EHRMAN LLP,<br><br>    Appellee.<br>_____/ | No. C 14-3887 CRB<br><br>**ORDER DENYING PARAVUE'S MOTION FOR REHEARING AND GRANTING HELLER'S MOTION TO STRIKE** |

Appellant Paravue Corporation's ("Paravue") Motion for Rehearing (dkt. 50) argues that this Court overlooked or misapprehended three points of fact in the case: (1) that attorney Jack Russo worked for Paravue officer Lauren Barghout individually, not for Paravue itself; (2) that Heller Ehrman ("Heller") was the sole law firm representing Paravue, and this representation continued until July 17, 2007, at which time attorney Mike Ackerman took over as counsel for Paravue; and (3) that Barghout did not condition consent to Heller's withdrawal on a refund from Heller, and thus Barghout did not delay agreeing to substitution.

Paravue also argues that this Court overlooked or misapprehended three points of law in this case, asserting that (1) the test for whether representation ended is not an objective test, but a test from the perspective of the client; (2) applying this test, the Court should take into account former Paravue CEO Larry Hootnick's perspective, given that the CEO transition from Hootnick to Barghout occurred after July 13, 2007; and (3) termination of representation on or after July 11, 2007 does not trigger the statute of limitations.

Following Paravue's Motion for Rehearing, Heller filed a Motion to Strike (dkt. 53) the following documents that Paravue filed in support of its Motion: declaration of Lauren Barghout (dkt. 50-1); declaration of Jack Russo (dkt. 50-2); declaration of George Trevor (dkt. 50-3); and all portions of the Motion for Rehearing that rely on these declarations. Heller argues that these documents are a classic example of a party attempting to impermissibly augment the record on appeal. See generally Motion to Strike.

The Court concludes that it specifically addressed all the facts and authorities raised by Paravue. Paravue has not carried its burden of showing that the Court "overlooked or misapprehended" the relevant facts or law—Paravue rather attempts to reargue the merits of the case. The Court thus DENIES Paravue's Motion for Rehearing. Furthermore, because the declarations submitted in support of Paravue's Motion for Rehearing are not "documents and proceedings considered by the court below," see In re Blumer, 95 B.R. 143, 147 (B.A.P. 9th Cir. 1988), the Court GRANTS Heller's Motion to Strike.

## I.    LEGAL STANDARD

### A.    Motion for Rehearing

Federal Rule of Bankruptcy Procedure 8022 provides that "[u]nless the time is shortened or extended by order or local rule, any motion for rehearing by the district court or [the bankruptcy appellate panel ("BAP")] must be filed within 14 days after entry of judgment on appeal." Fed. R. Bankr. P. 8022. "The motion must state with particularity each point of law or fact that the movant believes the district court or BAP has overlooked or misapprehended and must argue in support of the motion." Id. A motion for rehearing is designed to ensure that the reviewing court properly considered all relevant information in rendering its decision. Armster v. U.S. District Court, C.D. Cal., 806 F.2d 1347, 1356 (9th Cir. 1986). A motion for rehearing is not a means by which to reargue a party's case. See Anderson v. Knox, 300 F.2d 296, 297 (9th Cir. 1962).

### B.    Motion to Strike

When reviewing a bankruptcy court's decision, "[t]he district court acts as an appellate court." In re Daniels-Head & Associates, 819 F.2d 914, 918 (9th Cir. 1987); see 28 U.S.C. §

158. Under Federal Rule of Bankruptcy Procedure 8006, the record on appeal should contain all documents and proceedings considered by the court below. See In re Blumer, 95 B.R. 143, 147 (B.A.P. 9th Cir. 1988); Fed. R. Bankr. P. 8006; see also United States v. Elias, 921 F.2d 870, 874 (9th Cir. 1990) (quoting Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077–78 (9th Cir.1988) ("Documents or facts not presented to the district court are not part of the record on appeal."). Papers submitted after the district court's ruling should be stricken from the record on appeal. Kirshner v. United Corp. of America, 842 F.2d 1074, 1077–78 (9th Cir. 1988).

## II. DISCUSSION

### A. The Court Did Not Misapprehend or Overlook the Facts

Paravue argues that the Court misapprehended or overlooked three points of fact in the case. This argument fails, however, because the Court considered the facts in question and concluded that they compel a conclusion opposite from the one advanced by Paravue.

#### 1. Russo as Barghout's Counsel

First, Paravue argues that Russo worked as counsel for Barghout individually, not for Paravue Corporation. See Mot. at 2. Paravue asserts that "it is technically and factually incorrect to say Mr. Russo took any action for Paravue since all such actions were those for his client, Dr. Barghout." Id. Not so. In emails sent from Russo to Heller, Russo conveyed the terms under which Barghout was willing to consent to withdrawal. See Barghout Dep. Ex. 204 (dkt. 37-8 at 64). Barghout negotiated Heller's withdrawal on behalf of Paravue, and Russo communicated this message to Heller: as stated in this Court's prior Order, "the only reasonable inference to be drawn from his communication is that he was acting on Paravue's behalf." See Order (dkt. 48) at 12. Thus, Russo's email directly negates Paravue's assertion here that Russo acted as counsel for Barghout, not Paravue, at that time; only Paravue could have consented to the terms for withdrawal that Russo communicated to Heller. The Court thus did not "overlook or misapprehend" the facts disputed here. See Fed. R. Bankr. P. 8022.

3

### 2.     **Heller as Paravue's Sole Counsel**

Second, Paravue argues that Heller was the sole counsel representing Paravue, and this sole representation continued until July 17, 2007, at which time Ackerman took over as counsel for Paravue. See Motion at 2–3. Paravue notes the order following the July 13, 2007 TRO hearing as evidence of Heller's sole representation of Paravue. Id. But the record establishes that Ackerman was involved with the litigation dating back to as early as July 10, 2007. On July 10th, 2007, Ackerman accompanied Barghout to a hearing and advised the court of his willingness to undertake Paravue's representation. See Garten Decl. (dkt. 41-5) at 193. Moreover, the TRO order to which Paravue refers highlights Ackerman's involvement. See Order on Acuity's App. for TRO (dkt. 37-14 at 52) ("Barghout shall not enter the business offices of Paravue Corporation unless in the company of Michael G. Ackerman. Plaintiffs shall provide access to Michael G. Ackerman and Lauren Barghout"). The record thus indicates—as the Court stated—that Heller was not sole counsel to Paravue; Ackerman was also involved as early as July 10, 2007.

### 3.     **Barghout's Consent to Heller's Withdrawal**

Third, Paravue argues that Barghout did not condition consent to Heller's withdrawal on a refund from Heller, and thus Barghout did not delay agreeing to substitution. Motion at 2–3. Paravue argues that Russo's email discussing Heller's withdrawal does not contain language conditioning consent to withdrawal on a refund from Heller. See Barghout Dep. Ex. 204 (dkt. 37-8 at 64). But the email cannot reasonably be read any other way. It states—in response to Heller's email stating its intent to withdraw—that Barghout first wanted to know "[w]hat portion of the fees paid is [Heller] willing to refund to Paravue as a condition of withdrawal." Id. (emphasis added). Paravue argues that this was "little more than a polite request for further information and for a smooth transition, and it notes legal services that should be provided before a withdrawal occurs." See Motion at 3. No.[1]

---

[1] Though the plain language of the email refutes Paravue's argument on its face, it is worth noting that Heller's Opposition to Paravue's Motion also points out a Paravue Board Resolution authorizing Barghout to negotiate with Heller for the return of fees and "to condition any purported withdrawal by [Heller] on their reimbursement of fees paid by Paravue." See Opp'n (dkt. 52) at 8.

4

Paravue also argues that the Court incorrectly characterized the amount of time from Heller's notice of withdrawal to Barghout's agreeing to withdrawal as a "delay." See Motion at 4. It supports this assertion by pointing out the 7:46 PM timestamp on the withdrawal email from Heller sent on July 10, 2007, arguing that the Court should view the email as received on July 11, 2007, because Heller sent the email after business hours. Id.; see Withdrawal Email (dkt. 41-5) at 195. This point is moot because, as stated in this Court's prior Order, the "record shows that Paravue was far from 'the disadvantaged client unable to question or to pursue remedies for perceived wrongs,' and 'hence continuous representation tolling ended' at latest by July 11, 2007—more than one year before July 14, 2008. See Hensley, 13 Cal. App. 4th at 1172." See Order at 12.

### B.     The Court Did Not Misapprehend or Overlook Relevant Law

Paravue also argues that the Court overlooked or misapprehended three points of law in this case, asserting that (1) the test for whether representation ended is not an objective test, but a test from the perspective of the client; (2) applying this test, the Court should take into account former Paravue CEO Larry Hootnick's perspective, given that the CEO transition from Hootnick to Barghout occurred after July 13, 2007; and (3) termination of representation on or after July 11, 2007 does not trigger the statute of limitations. The Court concludes that each of these arguments fail for the following reasons.

#### 1.     Objective and Subjective Test

First, Paravue argues that the Court misstated the law in determining when representation ended here because the Court used a purely objective test, rather than the combined objective and subjective test prescribed by California law. Motion at 4–5. But the Court stated in its October 2015 Order that "California courts primarily employ 'an objective standard to determine whether an attorney's representation has ended." See Order (dkt. 48) at 10–11 (citing Worthington v. Rusconi, 29 Cal. App. 4th 1488, 1497 (1994). The Court then further explained that representation may end "when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." Order at 11 (citing Gonzalez v. Kalu, 140 Cal. App. 4th 21, 30–31 (2006)) (emphasis added).

5

The Court never stated that a purely objective standard applied; on the contrary, the test the Court used took into account Paravue's subjective ("actually has") and objective ("reasonably should have") expectations. See Kalu, 140 Cal. App. 4th at 30–31.

### 2. Hootnick's Perspective

Second, Paravue argues that in applying this test, the Court should have taken into account Hootnick's perspective because the CEO transition from Hootnick to Barghout occurred after July 13, 2007. Motion at 5. The record does not support Paravue's argument given that the CEO transition occurred before July 13, 2008. The record shows—in Barghout's deposition—that she learned of Hootnick's resignation on July 10, 2007 and appointed herself CEO that same day. See Barghout Dep. (dkt 41-4 at 176–77). The Court thus had no reason to take into account Hootnick's perspective because on July 13, 2007—the date Paravue argues the Court should have "take[n] into account the client's perspective"—Hootnick was no longer CEO. See Motion at 5.

### 3. Critical Date for Statute of Limitations

Finally, Paravue now attempts to argue, in part based on a reading of Judge Montali's decision below, that termination of Heller's representation on or after July 11, 2007 does not trigger the statute of limitations. See Motion at 6. Paravue's re-argument on this fundamental point misstates Judge Montali's decision and ignores the Court's conclusion in its October 2015 Order. See Order (dkt. 48) at 12 ("This record shows that Paravue was far from 'the disadvantaged client unable to question or to pursue remedies for perceived wrongs,' and 'hence continuous representation tolling ended' at latest by July 11, 2007—more than one year before July 14, 2008. See Hensley, 13 Cal. App. 4th at 1172."); Bankruptcy Ct. Order (dkt. 41-10 at 16) ("[M]ore likely by July 7th, even more so by July 10th, and certainly by July 11th, 2007, Heller's relationship with Paravue had ceased for purposes of beginning of the running of the statute of limitations, and therefore the tolling does not save [Paravue's] claims."). Paravue's arguments on the relevant law thus all fail.[2]

---

[2] The Court received Russo's January 15, 2016 letter to the Court (dkt. 56), and the Court concludes that the California Court of Appeal decision the letter cites does not affect the outcome here.

### C. Heller's Motion to Strike

Heller filed a Motion to Strike the following documents Paravue filed in support of its Motion for Rehearing: declaration of Lauren Barghout (dkt. 50-1); declaration of Jack Russo (dkt. 50-2); declaration of George S. Trevor (dkt. 50-3); and all portions of the Motion for Rehearing that refer to or rely on these Declarations. See Mot. to Strike (dkt. 53). Heller argues that these declarations were not before the bankruptcy court below and thus the Court should strike them. Id. at 2–3. In its Opposition, Paravue claims that the declarations do not include information "that is new or outside the record." Opp'n (dkt. 54) at 1. Paravue argues that the declarations "help the Court to understand the facts in the record before it." Id.

Paravue is incorrect in stating that the declarations do not include information that is "new or outside the record." See id. For example, Barghout states in her declaration that Russo's email to Heller regarding withdrawal was "simply a request for further information." See Barghout Decl. (dkt. 50-1) ¶ 5. Russo's email is not "new or outside the record," but Barghout's own characterization is. Similarly, Russo's declaration providing his own characterization of his email to Heller about its withdrawal is certainly new to the record. See Russo Decl. (dkt. 50-2) at 1. Paravue uses these new declarations to reargue its case, and they are improper in a motion for rehearing. See Anderson, 300 F.2d at 297.

Furthermore, Paravue cites no case law supporting the proposition that the Court should deny a motion to strike if new documents containing facts outside the appellate record will "help the Court to understand the facts in the record before it." See Opp'n at 1. In reviewing a bankruptcy court's decision, "[t]he district court acts as an appellate court." In re Daniels-Head & Associates, 819 F.2d at 918; see 28 U.S.C. § 158. The record on appeal should contain all documents and proceedings considered by the court below. See In re Blumer, 95 B.R. at 147; Fed. R. Bankr. P. 8006. Papers—like the declarations at issue here—submitted after the district court's ruling should be stricken from the record on appeal. See Kirshner, 842 F.2d at 1077–78.

//

//

7

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Paravue's Motion for Rehearing and GRANTS Heller's Motion to Strike.

**IT IS SO ORDERED.**

Dated: March 3, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE